IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | CASE NO.: 1:23-cr-70 |
| | ) | |
| APRIL EVALYN SHORT | ) | |

**GOVERNMENT'S FIRST FED.R.CRIM.P. RULE 16 EXPERT NOTICE: DORI MITCHELL FRANCO, DO, DEPUTY ARMED FORCES MEDICAL EXAMINER**

NOW COMES the United States of America, by and through Jill E. Steinberg, United States Attorney for the Southern District of Georgia, and provides this notice of its intent to call the following person to testify in the above-captioned matter pursuant to Fed.R.Evid. 702-705 about matters pertaining to forensic pathology:

Dr. Dori Mitchell Franco, D.O.,

**PROCEDURAL HISTORY**

On December 5, 2023, a grand jury sitting in the Southern District of Georgia returned a two-count indictment against defendant April Evalyn Short. (Doc. 1.) The defendant was charged therein with the offenses of Premeditated Murder, in violation of 18 U.S.C. § 1111, and Felony Murder, in violation of 18 U.S.C. § 1111. *Id*. The potential penalties for the charged offenses range from to death or imprisonment for not less than life (18 U.S.C. § 1111, 1114). (Doc. 2.)

On May 6, 2024, the Defendant appeared before this Court and entered a plea of Not Guilty to the charges. (Doc. 23.) The Court granted the government and the defense 90 days to file pretrial motions. (Doc. 24.) The Court also inquired of defense counsel about the potential appointment of additional counsel given the nature of the case. While the offenses

1

alleged in the instant indictment are ones for which the punishment of death is authorized, the U.S. Attorney General has not yet rendered a decision to seek such punishment. The Attorney General will make that decision after receiving the Government's formal recommendation memorandum, in which the Government will ideally include any evidence in mitigation provided by the Defendant.

**The Expert**

Dr. Dori Mitchell Franco is an active-duty Colonel in the United States Army. Between 2008 and June 2024 she served an Armed Forces Medical Examiner. Beginning in July 2024, she began serving as a medical examiner for the Defense POW/MIA Accounting Agency, whose mission it is to provide the fullest possible accounting for missing military personnel. Dr. Franco is board certified in forensic pathology, among other board certifications that are listed in her curriculum vitae, which has been provided to defense counsel (CV).

In her role as an Armed Forces Medical Examiner, Dr. Franco conducted autopsies on persons whose death falls within her jurisdiction. Dr. Franco's background, training and professional experience are described in her CV. To reach her scientific conclusions, Dr. Franco relied upon the experience detailed in her CV, her autopsy of minor child E.S., and information provided by law enforcement.

The government expects Dr. Franco will testify at trial about the field of forensic pathology, the purpose of an autopsy, the procedure of performing an autopsy, her findings regarding the injuries to E.S., and E.S's cause and manner of death.

Publications (i.e described as "Research Activities" in her CV) in which Dr. Franco participated in whole or in part, if any, a has been provided to defense

counsel prior to the filing of this notice by way of Dr. Franco's CV. Dr. Franco has not testified as an expert within the last 4 years.

**Forensic Pathology**

Forensic pathology is an application of medical jurisprudence. A forensic pathologist is a doctor who has completed training in anatomical pathology and has subsequently specialized in forensic pathology. In short, a forensic pathologist identifies the cause of death and collects evidence of sudden, unnatural, unattended, violent, or unexpected deaths.

The forensic pathologist performs autopsies/postmortem examinations with the goal determining causes of death as well as the possible manner of death. The autopsy report contains conclusions made relating to the following:

a. The pathological process, injury, or disease that directly results in or initiates a series of events that lead to a person's death (also called the mechanism of death), such as a bullet wound to the head, exsanguination caused by a stab wound, manual or ligature strangulation, myocardial infarction resulting from coronary artery disease, etc.; and

b. The manner of death, the circumstances surrounding the cause of death, which, includes the following: Homicide, Accidental, Natural, Suicide, and Undetermined (see below).

The autopsy also provides an opportunity for other issues raised by the death to be addressed, such as the collection of trace evidence or determining the identity of the deceased. Autopsies are performed when an unexpected death occurs, when

someone dies while not under the care of a physician, to assist in criminal cases, when a mass disaster occurs and requires the identification of the victims, upon request by the family or loved ones of the deceased, and in other unique circumstances.

The forensic pathologist examines and documents wounds and injuries, along with the possible causation of those injuries, at autopsy, at the scene of a crime, and on very rare occasions, in a clinical setting.

Forensic pathologists collect and examine tissue specimens under a microscope (histology) to identify the presence or absence of natural disease and other microscopic findings such as asbestos bodies in the lungs or gunpowder particles around a gunshot wound. They also collect and interpret toxicological specimens of body tissues and fluids to determine the chemical contributors leading to the cause of death.

In an autopsy, the forensic pathologist may be assisted by a technician.

### **Manner of Death**

Manner of death refers to how the cause of death came about, generally. Put another way, it refers to classifying the nature of the interaction between an individual and his/her environment, such that it resulted in his/her death. The acceptable classifications for manner of death are limited to the following: natural, accidental, homicide, suicide, and undetermined.

**a. Natural**: The CDC explains that natural deaths are those due solely or nearly totally to disease and/or the aging process. In other words, the body stops

functioning on its own, without intervening variables. Others in the field define it as "death from causes other than accident or violence." This would tend to suggest that natural causes might be improperly used as a default finding when other possibilities have been excluded.

    **b. Accidental:** The CDC explains that accidental deaths are those where there is little or no evidence that the injury or poisoning occurred with intent to harm or cause death. In essence, the fatal outcome was unintentional. In these cases, the individual unintentionally causes his/her own demise, and there are no other parties directly involved or responsible. If someone else kills an individual, whether they meant to or not, that is classified as a homicide.

    **c. Homicide**: Homicide is death at the hands of another. It has nothing to do with intent or state of mind. It is a neutral term without legal implication. Calling a homicide a "murder" does not fall within the purview of the agency performing the forensic death investigation. Therefore, even when someone accidentally kills an individual, it is still classified as a homicide.

    **d. Suicide**: The CDC explains that suicide is when people direct violence at themselves with the intent to end their lives, and they die as a result of their actions. In these cases, the individual intentionally causes their own demise, without the direct assistance or intervention of any other parties.

    **e. Undetermined**: Undetermined means there is not enough information to render a classification, or that one or more manners of death cannot be ruled out. For example, if one finds the skeletonized remains of a young adult male without

evidence of trauma, one likely cannot say whether the manner of death was accident, homicide, or suicide, because the cause of death is not known. In other instances, there may be insufficient information concerning the circumstances surrounding the death to explain the manner of death. Further, sometimes the ruling is the result of an incomplete or incompetent investigation.

**Procedure**

In general, the pathologist makes an external examination of the body which includes, but is not limited to, the height and weight of the decedent, notations of evidence of injury and any medical intervention. The external exam also notes lividity, rigor mortis and evidence of decomposition.

The pathologist then makes an internal examination of the decedent. This is generally made by making the "usual thoraco-abdominal incision" (surgical incision from shoulder to shoulder and from the midpoint of the shoulder-to-shoulder incision to the pubic bone) and removing the chest plate. The soft tissues of the scalp are examined, and the brain is removed.

In the instant case, Dr. Franco's description of her internal and external examinations are found in her autopsy report, which has been provided in discovery. Radiographs were obtained and incorporated into the "evidence of injury" section of the autopsy report. The brain was removed and sent for neuropathologic examination. Selected portions of organs were retained for microscopic examination. An Anthropology consultation is initiated. The decedent's medical records were reviewed. Photographs were taken.

### Dr. Franco's Specific Findings

Dr. Franco's finding, conclusions and opinions are contained primarily in her autopsy report dated February 28, 2024. In summary, Dr. Franco will testify that E.S. sustained sharp force injuries of the neck. This includes multiple stab and incised wounds to the left side of E.S's neck. The sharp force injuries resulted in injuries to the skin, to the left anterior neck muscles, to the left carotid artery, to the left vagus nerve, to the left lobe of the thyroid, and to the sixth and seventh cervical vertebrae. Dr. Franco will testify that the direction of the wound paths are front to back, left to right, and downward. She will also testify that associated injuries include extensive hemorrhage of the surrounding soft tissue and that E.S. sustained linear abrasions.

Dr. Franco will testify that E.S. also had contusions of the extremities and Café au lait spots. She will testify that toxicology results showed no ethanol detected in the heart blood and no screened drugs of abuse/medications detected in the heart blood.

Dr. Franco will opine that E.S. died from the sharp force injuries of the neck, of which the injury to the left carotid artery was fatal. She will also opine that the parallel linear abrasions are consistent with use of a serrated knife and that the contusions on the forearms and right lower leg are likely perimortem due to the minimal bleeding into the tissues and may have been caused by handling during resuscitation. Finally, Dr. Franco will opine that the manner of death is homicide.

**Expert Witness Signed Approval**

Dori Mitchell Franco issued a report detailing her opinions which has been previously provided in discovery to defense counsel. Said report was also signed by her, obviating the need for her to sign this disclosure. *See* Fed. R. Crim. P. 16(a)(1)(G)(v).

**MEMORANDUM OF LAW AND CITATIONS TO AUTHORITY**

The Federal Rules of Evidence provide for the admission of expert testimony when "scientific, technical, or other specialized knowledge will assist the trier of fact." Fed. R. Evid. 702. Pursuant to Rule 702, a witness, "qualified as an expert by knowledge, skill, experience, training, or education may testify . . . in the form of an opinion or otherwise." *Id.*

Expert testimony is admissible if it is both relevant and reliable, *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579 (1993)[1], and where it is "the kind that enlightens and informs lay persons without expertise in a specialized field." *United States v. Burchfield*, 719 F.2d 356, 357-58 (11th Cir. 1983). To ensure these elements are present, the trial judge serves as a "gatekeeper." *United States v. Majors*, 196 F.3d 1206, 1215 (11th Cir. 1999) (citing *Daubert*, 509 U.S. at 2796-97). "'[F]ederal district courts . . . perform [this] important gatekeeping function by screening the reliability of all expert testimony, but they have substantial discretion in deciding how to test an expert's reliability and whether the expert's relevant

---

[1] In *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court confirmed that *Daubert's* gatekeeping obligation extends to beyond scientific experts to all of the expert matters described in Rule 702. *Kumho Tire*, 526 U.S. 149; *United States v. Paul*, 175 F.3d 906, 910 (11th Cir. 1999) (holding that the trial judge is required to inquire into the areas of relevance and reliability whether the expert testimony is "scientific" or otherwise)).

testimony is reliable.'" *Majors*, 196 F.3d at 1215 (quoting *Forklifts of St. Louis, Inc. v. Komatsu Forklift, USA, Inc.,* 178 F.3d 1030, 1034 (8th Cir.1999); citing *Kumho Tire*, 526 U.S. at 1174-76).[2]

## CONCLUSION

WHEREFORE, the government requests that the Court permit the above-listed witnesses to testify pursuant to Fed.R.Evid. 702, subject to the government laying the proper evidentiary foundations at trial.

JILL E. STEINBERG
UNITED STATES ATTORNEY

*s/ Patricia Green Rhodes*
Patricia Green Rhodes
Assistant United States Attorney
Georgia Bar No. 307288
P.O. Box 2017
Augusta, GA 30903
(706) 826-4534

---

[2] A district court's decision to admit or exclude expert testimony under Rule 702 is reviewed for abuse of discretion. *General Elec. Co. v. Joiner*, 522 U.S. 136 (1997); *United States v. Gilliard*, 133 F.3d 809, 812 (11th Cir.1998).

**CERTIFICATE OF SERVICE**

I hereby certify that I have this day served the foregoing on all the parties in this case in accordance with the notice of electronic filing ("NEF") which was generated as a result of electronic filing in this Court.

This 5th day of July 2024.

          JILL E STEINBERG
          UNITED STATES ATTORNEY

          ***/s/ Patricia Green Rhodes***
          Patricia Green Rhodes
          Assistant United States Attorney
          Georgia Bar No. 307288
          P.O. Box 2017
          Augusta, Georgia 30903
          706-826-4534
          patricia.rhodes@usdoj.gov